| | |
|---|---|
| **FRANCIS M. HOGAN, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| ) | |
| **RUTHERFORD CORRECTIONAL** ) | |
| **CENTER, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint [Docs. 1, 6], filed under 42 U.S.C. § 1983. See 28 U.S.C. §§ 1915(e) and 1915A. Plaintiff is proceeding in forma pauperis. [Docs. 7, 11].

**I.    BACKGROUND**

Pro se Plaintiff Francis M. Hogan, Jr., is a prisoner of the State of North Carolina currently incarcerated at Rutherford Correctional Center ("Rutherford CC"), a minimum custody facility in Spindale, North Carolina. On December 18, 2023, Plaintiff sent a letter to the United States District Court for the Eastern District of North Carolina asking for "the proper paperwork to file a civil suit against Rutherford Correctional employees." [Doc. 1]. The Eastern District docketed Plaintiff's letter as a Complaint and transferred it to this District. [Docs. 1, 3]. On transfer here, the Clerk mailed Plaintiff, among other things, a blank prisoner § 1983 form. [12/21/2023 Docket entry]. On December 29, 2023, Plaintiff filed his Complaint in this matter, though not on the proper form,[1] naming the following Defendants: (1) Larry Godwin, identified as the Warden of

---

[1] The Clerk docketed this filing as an "Addendum" to Plaintiff's Complaint. The Court will consider Plaintiff's letter and this Addendum as Plaintiff's Complaint on initial review.

Rutherford CC; (2) Timothy Shelton, identified as the Assistant Warden; (3) Cassandra Howell, identified as the Head Programmer; (4) Aniyah McMullens, identified as a Programmer; and (5) Rutherford CC. [Doc. 6]. Plaintiff does not allege in which capacities he purports to sue these Defendants. [See id.]. As such, the Court will address both individual and official capacity claims.

Plaintiff alleges as follows. Plaintiff, a Caucasian male, arrived at Rutherford CC on August 11, 2023. [Id. at 1, 3]. On August 15, 2023, Defendant McMullens told Plaintiff, along with 15 to 18 other inmates, that they would be eligible for a job after having been there for 90 days. Defendant McMullens told the inmates that if they "got a job outside the fence," they would hold that job for 90 days and then be "put on the list" for the work release program.

From August 10, 2023 to December 19, 2023, Plaintiff submitted 18 different requests to Defendants McMullens, Howell, or Shelton for a transfer and/or a job, as well as at least two grievances, which were denied.[2] [Id. at 6]. Most of these requests were submitted to Defendant McMullens, who has "ignored" them in "deriliction [*sic*] of her duties." When Plaintiff asked why she had not responded, Defendant McMullens would tell him she was "too busy," "forgot," or that she would "call [Plaintiff] down." [Id. at 2]. Defendant McMullens, however, "seems to have time for other inmates that are of different skin color than [Plaintiff]." [Id.].

On October 11, 2023, Plaintiff wrote a letter to Defendant Godwin stating that he was having problems trying to get a job. The same day, Defendant McMullens called Plaintiff into her office and asked, "How can I help you?" Plaintiff asked to be transferred and for a job if they would not transfer him. Defendant Howell entered the office and said, "Trust me we want you gone" and called Plaintiff a "pain in the ass" because of his letters, grievances, and requests. [Id. at 4].

---

[2] By his own allegations, all but two of the job-related requests were made before Plaintiff was even eligible for a job. [See Doc. 6 at 6].

2

Plaintiff has also filed a grievance "about this matter." [Id. at 2]. He was called into Defendant Shelton's office, who told him that "if [Plaintiff] stopped with the letters and grievance," he and Defendant Godwin would "put [Plaintiff] straight on a D.O.T. job and then after 90 days … put [him] straight to work release." [Id.]. Plaintiff agreed because he needed to be on work release to help support his family. [Id.]. Plaintiff alleges that he is being retaliated against because of said letters, grievances, and requests. [Id. at 4].

Since Plaintiff arrived at Rutherford CC, many African Americans arriving after him have gotten jobs and Plaintiff is "not the only white person [Defendant] Howell is doing this to." [Id. at 3]. Defendant Howell screens the request forms and "is throwing away the ones that she deems unnecessary." [Id.]. Moreover, other inmates who are African American and have gotten "infraction/dirty urine" are returned to their jobs, while Plaintiff is a "misdemeanor, zero infractions," and does not need a risk assessment is still unable to get a job. [Id. at 4].

On December 16, 2023, when Plaintiff asked Defendant Howell regarding the status of his request form, she told him that he was "not supposed to send her any requests about a job." [Id. at 3]. When he asked who he should send a request to, she slammed the door in his face. [Id. at 4]. On December 18, 2023, Plaintiff asked Defendant McMullens for an available dorm janitor job. She wrote down Plaintiff's name and OPUS number to give to Defendant Howell. "Not even 15 minutes later she called (Ms. Howell) and gave the job to someone else." [Id. at 4-5]. When Plaintiff asked Defendant Shelton about the job, Defendant Shelton "with an attitude of disgust" said that "someone called Raleigh on [Plaintiff's] behalf." Plaintiff also alleges that he is being retaliated against because his family "called Raleigh" to help him with the job issue. [Id. at 5].

Plaintiff asked Defendants Shelton, Godwin, Howell, and McMullens about transferring to a prison closer to his wife and children. Defendants Godwin and Shelton told Plaintiff that a

transfer "would not happen because they are short on staff." [Id. at 3].

Plaintiff purports to state claims for "deriliction of duties," discrimination, and retaliation. [Id. at 5]. For injuries, Plaintiff alleges that he "could have been on work release for the last 5 months" and has "lost that pay." [Id.]. Plaintiff fails to state what relief he seeks. [See Doc. 6].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915A.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law. See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v.

4

Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. 166, 143 S.Ct. 1444 (2023). Because Plaintiff fails to allege what constitutional rights he believes were violated, the Court will address those claims fairly raised by Plaintiff's Complaint.

### A. Rutherford CC

Defendant Rutherford CC is not a proper Defendant in this matter because it is not a "person" subject to suit under § 1983. See Brooks v. Pembroke Cty. Jail, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989). As such, Plaintiff has failed to state a claim against this Defendant and the Court will dismiss it.

### B. Official Capacity Claims

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Because a state is not a "person" under § 1983, state officials acting in their official capacities cannot be sued for damages thereunder. Allen v. Cooper, No. 1:19-cv-794, 2019 WL 6255220, at *2 (M.D.N.C. Nov. 22, 2019). Furthermore, as noted the Eleventh Amendment bars suits for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003). To the extent Plaintiff intended to sue the individual Defendants in their official capacities, these claims do not survive initial review and will be dismissed.

### C. Retaliation

Plaintiff alleges that Defendants retaliated against him for his letters, requests, and grievances regarding a job and a transfer. An inmate has a clearly established First Amendment right to be free from retaliation for filing grievances. See Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 540 (4th Cir. 2017); Thompson v. Commonwealth of Va., 878 F.3d 89, 110 (4th Cir. 2017).

Inmates also have a protected First Amendment right to complain to prison officials about prison conditions and improper treatment by prison employees that affect them. See Patton v. Kimble, 717 Fed. App'x 271, 272 (4th Cir. 2018).

To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (quotation marks and citation omitted). Retaliation claims brought by prisoners, however, are treated with skepticism because every act of discipline by a prison official is retaliatory in that it responds directly to prisoner misconduct. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

Moreover, to establish liability under § 1983, a plaintiff must show that the defendants "acted personally" to cause the alleged violation. See Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted). As such, the doctrine of respondeat superior does not apply in actions brought under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Under Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994), however, supervisory liability may attach under § 1983 if a plaintiff can establish three elements: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. 13 F.3d at 799 (citations omitted).

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, the Court finds that Plaintiff's First Amendment retaliation claim against Defendant

6

Shelton is not clearly frivolous and survives initial review.  Plaintiff, however, has failed to state a retaliation claim against Defendants Godwin, Howell, or McMullens.  That is, Plaintiff's allegations related to these Defendants do not state a causal relationship between any protected activity and their conduct.  See Martin, 977 F.3d at 299.  As for Defendant Godwin in particular, Plaintiff fails to allege any personal participation by him.  Plaintiff alleges that he wrote Defendant Godwin a letter on October 11, 2023 – a month before Plaintiff was actually eligible – regarding having difficulty getting a job and later that same day Defendant McMullen called Plaintiff to her office and asked how she could help him.  Plaintiff also alleged that after he filed a grievance, Defendant Shelton told him that if he stopped "with the letters and grievance," Defendant Shelton and Defendant Godwin would assign Plaintiff to a D.O.T. job and then work release.  These allegations against Defendant Godwin are insufficient to constitute personal participation or to satisfy the elements of supervisory liability.  The Court, therefore, will dismiss the retaliation claims against Defendants McMullens, Howell, and Godwin.

### D. Discrimination

Plaintiff, a Caucasian inmate, also claims that Defendants have discriminated against him because African American inmates at Rutherford CC have received job assignments and been allowed to return to job assignments despite infractions and "dirty urine," while Plaintiff remains without a job.  The Court will construe this claim under the Fourteenth Amendment's equal protection clause.

To state an equal protection claim, Plaintiff must allege that he has been treated differently from others with whom he is similarly situated, and that the unequal treatment was the result of intentional or purposeful discrimination.  See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).  In doing so, the plaintiff must set forth "specific, non-conclusory factual allegations that

7

establish an improper [discriminatory] motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003) (quoting Trulock v. Freeh, 275 F.3d 391, 405 (4th Cir. 2001)).

Giving Plaintiff the benefit of every reasonable inference and assuming the truth of his allegations, Plaintiff has nonetheless failed to state a claim for an equal protection violation. Plaintiff alleges that Defendant McMullens "seems to have time for other inmates that are of a different skin color" than the Plaintiff, that Plaintiff is "not the only white person" affected by Defendant Howell's handling of job requests, and that African Americans with failed drug tests or infractions are returned to their jobs while Plaintiff is unable to get one. Plaintiff, however, fails to allege that any of this alleged unequal treatment is the result of intentional or purposeful discrimination against Caucasian people. Rather, Plaintiff's allegations suggest that he is not being assigned a job because some or all the Defendants are irritated by Plaintiff's frequent requests for transfer and largely premature requests for a job and/or in retaliation for his requests and grievances, not because he is white. The Court, therefore, will dismiss this claim.

E. "Dereliction of Duties"

Plaintiff purports to state a claim based on Defendants' "dereliction of duties," which appears in substance to be a claim based on Plaintiff's inability to redress grievances and/or Defendants' failure to perform job functions or follow prison policy. "[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). "An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance procedure." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017). Moreover, there is no cause of action under § 1983 for violation of policy. Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C. Jan. 9, 1992) ("[Section 1983] guarantees a person's *constitutional* rights against violation by state actors. It does not provide any relief against

prison rules violations assuming, *arguendo*, that such a violation occurred.") (emphasis in original).

As such, to the extent Plaintiff seeks to state a constitutional claim based on Defendants' failure to address his requests and grievances or failure to perform job functions or follow their own policies relative thereto, he has failed. This claim will be dismissed.

## IV. CONCLUSION

In sum, the Complaint survives initial review under 28 U.S.C. § 1915A as to Plaintiff's First Amendment retaliation claim against Defendant Shelton only. All remaining claims, including any official capacity claims, fail initial review and will be dismissed.

## ORDER

**IT IS, THEREFORE, ORDERED** that all claims asserted in this matter as to all Defendants are hereby **DISMISSED** for failure to state a claim, except for Plaintiff's First Amendment retaliation claim against Defendant Shelton, which is allowed to pass initial review.

**IT IS FURTHER ORDERED** that Rutherford Correctional Center, Larry Godwin, Aniyah McMullens, and Cassandra Howell are **DISMISSED** as Defendants in this matter.

**IT IS FURTHER ORDERED** that the Clerk of Court shall commence the procedure for waiver of service as set forth in Local Civil Rule 4.3 for Defendant Shelton, who is alleged to be a current or former employee of the North Carolina Department of Adult Corrections.

The Clerk is respectfully instructed to update the docket in this matter to add Larry Godwin, Timothy Shelton, Cassandra Howell, and Aniyah McMullens as Defendants in this matter.

The Clerk is also instructed to mail Plaintiff an Opt-In/Opt-Out form pursuant to Standing Order 3:19-mc-00060-FDW.

Signed: February 1, 2024

Robert J. Conrad, Jr.
United States District Judge