UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:23-cv-00357-RJC

| | |
|---|---|
| FRANCIS M. HOGAN, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| ) | |
| TIMOTHY SHELTON, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 26].

**I.    BACKGROUND**

Pro se Plaintiff Francis M. Hogan, Jr., is a prisoner of the State of North Carolina, currently incarcerated at Rutherford Correctional Center ("Rutherford CC"), a minimum custody facility in Spindale, North Carolina. On December 18, 2023, Plaintiff sent a letter to the United States District Court for the Eastern District of North Carolina asking for "the proper paperwork to file a civil suit against Rutherford Correctional employees." [Doc. 1]. The Eastern District docketed Plaintiff's letter as a Complaint and transferred it to this District. [Docs. 1, 3]. On transfer here, the Clerk mailed Plaintiff, among other things, a blank prisoner § 1983 form. [12/21/2023 Docket entry]. On December 29, 2023, Plaintiff filed his Complaint in this matter, though not on the proper form,[1] naming the following Defendants: (1) Larry Godwin, identified as the Warden of Rutherford CC; (2) Timothy Shelton, identified as the Assistant Warden; (3) Cassandra Howell,

---

[1] The Clerk docketed this filing as an "Addendum" to Plaintiff's Complaint. [See Doc. 6]. The Court considered Plaintiff's letter and this Addendum as Plaintiff's Complaint on initial review.

identified as the Head Programmer; (4) Aniyah McMullens, identified as a Programmer; and (5) Rutherford CC.² [Doc. 6]. Relevant here, Plaintiff alleged as follows.

Plaintiff, a Caucasian male, arrived at Rutherford CC on August 11, 2023. [Id. at 1, 3]. On August 15, 2023, Defendant McMullens told Plaintiff, along with 15 to 18 other inmates, that they would be eligible for a job after having been there for 90 days. Defendant McMullens told the inmates that if they "got a job outside the fence," they would hold that job for 90 days and then be "put on the list" for the work release program. [Id. at 1-2].

From August 10, 2023, to December 19, 2023, Plaintiff submitted 18 different requests to Defendants McMullens, Howell, or Shelton for a transfer and/or a job, as well as at least two grievances, which were denied.³ [Id. at 6]. Most of these requests were submitted to Defendant McMullens, who ignored them, claiming she was too busy or forgot, although she "seems to have time for other inmates that are of different skin color than [Plaintiff]." [Id. at 2].

On October 11, 2023, Plaintiff wrote a letter to Defendant Godwin stating that he was having problems trying to get a job. The same day, Plaintiff asked Defendant McMullens to be transferred or, alternatively, for a job if they would not transfer him. Defendant Howell entered the office and said, "Trust me we want you gone" and called Plaintiff a "pain in the ass" because of his letters, grievances, and requests. [Id. at 4].

On December 16, 2023, when Plaintiff asked Defendant Howell regarding the status of his request form, she told him that he was "not supposed to send her any requests about a job." [Id. at 3]. When he asked who he should send a request to, she slammed the door in his face. [Id. at

---

² Because Plaintiff failed to allege whether he sought to sue Defendants in their individual and/or official capacities, the Court considered both on initial review.

³ By his own allegations, all but two of the job-related requests were made before Plaintiff was even eligible for a job. [See Doc. 6 at 6].

2

4]. On December 18, 2023, Plaintiff asked Defendant McMullens for an available dorm janitor job. She wrote down Plaintiff's name and OPUS number to give to Defendant Howell. "Not even 15 minutes later she called (Ms. Howell) and gave the job to someone else." [Id. at 4-5]. When Plaintiff asked Defendant Shelton about the job, Defendant Shelton "with an attitude of disgust" said that "someone called Raleigh on [Plaintiff's] behalf." [Id. at 5].

Plaintiff alleges that he is being retaliated against because of his letters, grievances, requests, and because his family "called Raleigh" to help him with the job issue. [Id. at 4-5]. At some unidentified time, he was called into Defendant Shelton's office, who told him that "if [Plaintiff] stopped with the letters and grievance," he and Godwin would "put [Plaintiff] straight on a D.O.T. job and then after 90 days … put [him] straight to work release." [Id.]. Plaintiff agreed because he needed to be on work release to help support his family. [Id.].

Plaintiff purported to state several claims, including claims of retaliation and discrimination. [Id. at 5]. Plaintiff's First Amendment retaliation claim against Defendant Shelton in his individual capacity survived initial review under 28 U.S.C. §§ 1915A and 1915(e). The Court dismissed Plaintiff's remaining claims and the remaining Defendants for Plaintiff's failure to state a claim for relief. [Doc. 12 at 5-9].

Now pending is Defendant's Rule 12(b)(6) motion to dismiss Plaintiff's remaining claim for his failure to state a claim for relief. [Doc. 26]. In this regard, Defendant argues that Plaintiff has not alleged that Defendant "took any action in retaliation against Plaintiff in response to Plaintiff's exercise of his First Amendment rights." [Id. at 1]. The Court promptly notified Plaintiff of his right to respond to Defendant's motion. [Doc. 27]. Plaintiff timely responded.[4]

---

[4] In addition to addressing Defendant's motion to dismiss, Plaintiff also complains that he "filled out the paperwork for an attorney to represent [him] and [has] heard nothing back." [Doc. 29 at 1]. The Court sees nothing in the docket in this matter indicating that Plaintiff has moved for appointment of counsel. If Plaintiff would like the Court to consider appointing counsel for him, he may properly so move. Plaintiff

3

[Doc. 29].

This motion is ripe for adjudication.

## II. STANDARD OF REVIEW

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197 (2007). "Specific facts are not necessary; the statement need only "give the defendant fair notice of what the … claim is and the grounds upon which it rests." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007) (citation and internal quotation marks omitted)).

On a motion to dismiss for failure to state a claim, the Court must accept the factual allegations of the claim as true and construe them in the light most favorable to the non-moving party. Coleman v. Maryland Ct. of Appeals, 626 F.3d 187, 189 (4th Cir. 2010). To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556).

Moreover, a document filed *pro se* is "to be liberally construed," Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1976), and "a *pro se* complaint, however, in artfully pleaded, must be held to less stringent standards that formal pleadings drafted by lawyers," ibid. (internal quotation

---

also takes issue with the timing of Defendant's filing of his motions for extensions of time to answer Plaintiff's Complaint and the pending motion to dismiss, claiming a lack of good faith. [See id. at 1-2]. The Court has reviewed the docket and sees nothing improper or untimely about these filings; counsel with onerous case loads and busy schedules typically wait until the day filings are due to seeks extensions of the deadlines therefore. Plaintiff would be well served not to put such extraneous and baseless complaints before the Court.

marks and citation omitted).

## III. DISCUSSION

An inmate has a clearly established First Amendment right to be free from retaliation for filing grievances. See Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 540 (4th Cir. 2017); Thompson v. Commonwealth of Va., 878 F.3d 89, 110 (4th Cir. 2017). Inmates also have a protected First Amendment right to complain to prison officials about prison conditions and improper treatment by prison employees that affect them. See Patton v. Kimble, 717 Fed. App'x 271, 272 (4th Cir. 2018).

To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (quotation marks and citation omitted).

In support of his retaliation claim against Defendant Shelton, Plaintiff alleges that, over a four-month period between August and December 2023 while he was incarcerated at Rutherford CC, he submitted 18 requests for a transfer and/or a job and at least two grievances. On October 11, 2023, while Plaintiff was in McMullen's office asking to be transferred or alternatively for a job, Howell walked in and said, "Trust me we want you gone" and called Plaintiff a "pain in the ass" because of his letters, grievances, and requests. At some point, Plaintiff was called into Defendant Shelton's office, who told Plaintiff that "if [Plaintiff] stopped with the letters and grievance," he and Godwin would "put [Plaintiff] straight on a D.O.T. job and then after 90 days … put [him] straight on work release." Plaintiff alleges that he was being retaliated against because of his letters, grievances, and requests.

5

Defendant argues that Plaintiff's retaliation claim must be dismissed because Plaintiff did not allege that Defendant Shelton personally took any retaliatory action against him. [Doc. 26-1 at 5]. In this regard, Defendant argues that his alleged statement that he and Godwin "would put [Plaintiff] straight on a D.O.T. job" if Plaintiff would "stop with the letters and grievances" amounts only to an "*assurance* about a future job," which "is not the same thing as an allegation that Defendant Shelton prevented or denied selecting Plaintiff for a job because of his letters and grievance." [Id. at 6 (emphasis in original)]. Defendant furthers that "[t]he prevention or denial would be the 'retaliatory act.'" [Id. at 6 (quoting Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994))].

Plaintiff responded, simply arguing that "[i]t is clearly stated in the complaint that Defendant Shelton retaliated against [Plaintiff] for writing letters, requests, and grievances. He kept [Plaintiff] from getting a work job because of said letters, request, grievances and [Plaintiff's] family calling." [Doc. 29 at 2].

While the Court agrees that an assurance about a future job does not, in itself, allege a retaliatory act, one can reasonably infer from Plaintiff's allegations that Defendant Shelton withheld employment from Plaintiff in retaliation for Plaintiff's numerous requests, letters, and grievances. Although the call is close, the Court finds that Plaintiff, who is proceeding pro se, has sufficiently stated a claim for retaliation against Defendant Shelton and will allow Plaintiff's action to proceed at this time. The Court, therefore, will deny Defendant's motion to dismiss.

## IV. CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss is denied.

### ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss [Doc. 26] is **DENIED** and Defendant shall **ANSWER** Plaintiff's Complaint within 21 days of this Order.

**IT IS SO ORDERED**.
Signed: September 30, 2024

_____
Robert J. Conrad, Jr.
United States District Judge